## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| CHRISTOPHER QUIDGEON, d/b/a DADDYO'S TATTOOS AND PIERCINGS, <br><br> Plaintiff, <br><br> v. <br><br> JOHN OLSEN, individually, JOHN OLSEN d/b/a BODY ART BY DADDY-O, and DADDY-O'S TATTOO'S INC., an Illinois Corporation, <br><br> Defendants. | Case No.   10-cv-1168 |

## O R D E R  &  O P I N I O N

This matter is before the court on Plaintiff's Motion for Default Judgment (Doc. 4).  Responses were due by November 1, 2010; none were filed.  For the following reasons, Plaintiff's Motion for Default Judgment is GRANTED in part and DEFERRED.

### PROCEDURAL HISTORY

Plaintiff has been doing business as Daddyo's Tattoo's and Piercings in Centralia, Illinois since 2003.  On June 1, 2010, he filed suit against John Olsen individually, John Olsen doing business as Body Art by Daddy-O's and Daddy-O's Tattoo's Inc., alleging:  1) trademark infringement, false designation of origin, and false or misleading representations of fact in violation of 15 U.S.C. § 1125(a)(1)(A), 2) trademark infringement and unfair competition in violation of Illinois common law, 3) deceptive trade practices in violation of 815 Ill. Comp. Stat. 510/2, and 4)

injury to business reputation and dilution of a federally registered and common law mark in violation of 765 Ill. Comp. Stat. 1036/65. (Doc. 1 at 1-13).

On June 8, 2010, John Olsen was properly served with a Summons and a copy of the Complaint, which indicated that he was to answer or otherwise respond within 21 days. (Docs. 2 & 3). As Defendant has failed to enter an appearance or otherwise respond, on October 14, 2010, Plaintiff filed the instant Motion for Default Judgment, seeking the entry of Default against the Defendants. Because Defendants' have failed to appear after being properly served with process, the Clerk is directed to ENTER DEFAULT against all Defendants.

In addition, Plaintiff seeks to have this Court enter a Default Judgment in his favor. As part of such Judgment, Plaintiff asks this Court to: 1) enter a permanent injunction against Defendants enjoining them from using or displaying Plaintiff's federally registered "DADDYO'S TATTOO" service mark or any similar or confusing variation thereof, and from continuing any other acts of deception or unfair competition; 2) seize and remove from Defendants any and all property or goods bearing infringing trademarks, the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in all such violations; 3) require Defendants to account to Plaintiff for any and all profits derived by them from the sale of all goods/or services derived through or associated with their acts of infringement, unfair competition, and/or dilution, and award Plaintiff damages to compensate him for loss of revenue, loss of goodwill, and damage to goodwill and reputation; 4) order that all products, systems, merchandise, labels, signs, prints, packages, wrappers, receptacles, advertisements,

and any other tangible items in Defendants' possession bearing the mark "DADDY-O'S TATTOO'S" or "BODY ART BY DADDY-O" or trademarks confusing similar thereto, as well as all molds, plates, mortices, computer programs and files, and all other tangible and/or intangible means of making the same be accounted, delivered up, and destroyed; 5) award Plaintiff all damages suffered as well as all of Defendants' profits; 6) award Plaintiff treble damages or profits, whichever is greater; 7) award Plaintiff attorneys' fees in the amount of $4,572.30; 8) impose punitive damages upon Defendants in the amount of $5,000.00; 9) assess the costs of this action against Defendants; and 10) award Plaintiff both pre-judgment and post-judgment interest.

## DISCUSSION

### I. LIABILITY[1]

Plaintiff has been doing business as "Daddyo's Tattoos and Piercings" in Centralia, Illinois since 2003. (Doc. 1 ¶ 1). As part of this business, Plaintiff is engaged in, among other things, the selling of tattooing and body piercing services. (Doc. 1 ¶ 8). In 2008, Plaintiff applied for a service mark for "DADDYO'S TATTOO" from the United States Patent and Trademark Office, as it relates to tattooing and body piercing services. (Doc. 1 ¶ 11). Plaintiff's service mark was registered on March 3, 2009, and remains in full force and effect. (Doc. 1 ¶¶ 11-12). Plaintiff has also established common law service mark rights in this service mark through his

---

[1] Unless otherwise noted, all factual information is drawn from Plaintiff's Complaint (Doc. 1). Upon a defendant's default in federal court, the well-pleaded facts relating to liability in a complaint are taken as true. *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983). Fed. R. Civ. Pro. 8(b)(6).

3

long and uninterrupted use of the mark in connection with tattooing and body piercing services, beginning on May 1, 2003. (Doc. 1 ¶ 13).

Plaintiff has expended substantial time, effort, money and resources to develop and maintain the goodwill that is associated with his services under the "DADDYO'S TATTOO" service mark. (Doc. 1 ¶ 14). Further, the sales, advertising and promotion of the services sold and offered under that mark have been substantial, resulting in a reputation for high quality tattooing and body piercing services. (Doc. 1 ¶¶ 15-16).

On June 9, 2008, without Plaintiff's authority or consent, Defendants began using marks confusingly similar to Plaintiff's mark. (Doc. 1 ¶ 18). On that date, Defendant John Olsen began doing business as Daddy-O's Tattoo's Inc., when he registered that business with the Illinois Secretary of State. (Doc. 1 ¶ 19). Defendant John Olsen is currently doing business as Body Art by Daddy-O, which is not a registered fictitious name of Daddy-O's Tattoo's Inc., at the same location to which Daddy-O's Tattoo's Inc. is registered. (Doc. 1 ¶ 20). Defendants are also engaged in the selling of tattooing and body piercing services. (Doc. 1 ¶ 21). On August 17, 2009 and February 11, 2010, Plaintiff sought to resolve this dispute without litigation by sending Defendants cease and desist letters. (Doc. 1 ¶ 24).

"A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). Plaintiff has pled seven claims for relief against Defendants, including federal law claims for trademark infringement, false designations of origin, and false and misleading representations

of fact in violation of 15 U.S.C. § 1125(a)(1)(A), as well as Illinois state law claims for trademark infringement and unfair competition in violation of Illinois common law, deceptive trade practices in violation of 8 Ill. Comp. Stat. 510/2, and injury to business reputation and dilution of Plaintiff's federally registered and common law mark in violation of 765 Ill. Comp. Stat. 1036/65. (Doc. 1 ¶¶ 1-81).

As the Court has entered default, it may not now consider the merits of Plaintiff's claims. The Seventh Circuit has held that when a defendant defaults, it has "thus thrown in the towel" and "there is nothing left for the district court to do except enter judgment." *Chathas v. Local 134 Intern. Broth. of Elec. Workers*, 233 F.3d 508, (7th Cir. 2000). The Circuit went on to explain that "[t]he absence of a controversy in a constitutional sense precludes the court from issuing an opinion on whether defendant actually violated the law. Such an opinion would be merely an advisory opinion, having no tangible, demonstrable consequence, and is prohibited." *Id.; see also American Taxi Dispatch, Inc. v. American Metro Taxi & Limo Co.*, 582 F.Supp.2d 999, 1004-05 (N.D. Ill. 2008). Therefore, the Court necessarily finds that Defendants are liable to Plaintiff on each cause of action pled in Plaintiff's Complaint. However, the Court still must analyze what remedies are appropriate. *e360 Insight*, 500 F.3d at 604.

## II. DAMAGES

"Although upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered ordinarily are not." *Dundee Cement Co.*, 277 F.2d at 1323. Accordingly, a "judgment by default may not be entered without a hearing on damages unless . . .

the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.* Here, Plaintiff is requesting ten different forms of relief, which the Court will analyze in turn.

### A. Permanent Injunction

The first form of relief sought by Plaintiff is a permanent injunction, enjoining and restraining Defendants from using or displaying Plaintiff's federally registered "DADDYO'S TATTOO" service mark and/or common law marks, or any similar or confusing variations thereof, including "DADDY-O'S TATTOO'S" and/or "BODY ART BY DADDY-O," in its trade names, advertising, invoices stationary, directory listings, domain names, websites, Internet megatags, keywords for Internet search engines, post URL or forwarding commands, hyperlinks, and any other electronic coding and search terms, and from continuing any and all acts of deception or unfair competition. (Doc. 4 at 2). This Court has the power to issue such an injunction pursuant to 15 U.S.C. § 1116(a), as well as 765 Ill. Comp. Stat. 1036/65.

Before it may be awarded a permanent injunction, however, Plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *e360 Insight*, 500 F.3d at 604. Although the Seventh Circuit has established that "damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no

adequate remedy at law," *Re/Max North Century, Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001), Plaintiff has not adequately demonstrated any such damage to the Court. As previously noted, allegations of the Complaint relating *to damages* are not to be taken as true for the purposes of entering default judgment. *Dundee Cement Co.*, 277 F.2d at 1323. Accordingly, before the Court can consider whether a permanent injunction is warranted, Plaintiff must submit evidence to the Court that establishes that Plaintiff has or continues to suffer a loss of goodwill, reputation, and/or profits as a result of Defendant's violations.[2] Therefore, Plaintiff's request for a permanent injunction is DEFERRED until such time as Plaintiff submits such evidence to the Court.

### B. Seizure and Removal of Goods and Property

Plaintiff also asks this Court to issue an order providing for the seizure and removal from Defendants' premises, and from all other sources available to Defendants, all of Defendants' property and goods bearing infringing trademarks, the means of making such trademarks, and records documenting the manufacture, sale, or receipt of things involved in all such violations. (Doc. 4 at 2).

The Court's power to issue such an order arises from 15 U.S.C. § 1116(d). This provision, however, appears to the Court to authorize such seizure only under terms similar to a temporary restraining order. For instance, §1116(d)(1)(A) provides that such an order may be granted upon an ex parte application, and § 1116(d)(4)(B) requires that the before issuing such order, the Court find that the applicant has not publicized the requested seizure, and that if such seizure were

---

[2] Plaintiff may accomplish this through the filing of detailed affidavits, or at an evidentiary hearing which the Court will set upon Plaintiff's request.

publicized, the person against whom seizure would be ordered would destroy, move, hide or otherwise make inaccessible the matters to be seized. The instant request has been made in Plaintiff's publicly-accessible Complaint (Doc. 1) and Motion for Default Judgment (Doc. 4), both of which have been served on Defendants. Accordingly based upon these facts alone, the Court cannot make the requisite findings to issue such an order pursuant to § 1116(d).[3] Therefore, Plaintiff's prayer for the issuance of such order is DENIED.

### C. Accounting for Profits and Award of Damages for Loss of Revenue and Goodwill

Next, Plaintiff requests that Defendants be required to account to Plaintiff for any and all profits derived by Defendants from the sale of all goods/or services derived through or associated with Defendants' acts of infringement, unfair competition, and/or dilution; and further that Plaintiff be awarded damages for Defendant's infringement, unfair competition, and/or dilution of Plaintiff's mark and Defendant's unfair trade practices so as to compensate Plaintiff for all damages, including loss of revenue, loss of goodwill, and damage to its goodwill and reputation as a result of Defendants' acts.

The Court has the power to order Defendant to account for its profits in cases of trademark infringement and dilution. 15 U.S.C. § 1117(a); *see Bunn-O-Matic Corp. v. Bunn Coffee Svc., Inc.*, 88 F.Supp.2d 914, 927 (C.D. Ill. 2000) (*citing* 15

---

[3] Moreover, Plaintiff has not complied with many additional requirements of § 1116(d), such as giving notice to the United States Attorney for the Central District of Illinois of his request, providing the Court with an affidavit or verified complaint establishing facts sufficient to show that he will suffer an immediate and irreparable injury if the seizure is not ordered, or providing a particular description of the matter to be seized. *See* 15 U.S.C. § 1116(d)(2)-(5).

U.S.C. § 1117(a); *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir. 1990); *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994)). Accordingly, Defendants must account to Plaintiff for any and all profits derived by Defendants from the sale of all goods/or services derived through or associated with Defendants' acts of infringement, unfair competition, and/or dilution, i.e., through its use of the names Daddy-O's Tattoo's Inc. and Body Art by Daddy-O. To establish Defendants' profits, Plaintiff must only prove Defendants' sales, the burden is on the Defendants to prove elements of any costs or deductions that it would like to claim. 15 U.S.C. § 1117(a). However, as of yet Plaintiff has not submitted to the Court any evidence of Defendants' profits, and thus the Court may not enter such an award at this time.

With regards to Plaintiff's claim for damages, Plaintiff has also failed to provide the Court with any evidence as to the amount of damages sustained. The Seventh Circuit has held that "a plaintiff wishing to recover damages for a violation of the Lanham Act must prove the defendant's Lanham Act violation, that the violation caused actual confusion among consumers of plaintiff's product, and, as a result, that plaintiff suffered actual injury, i.e. a loss of sales, profits, or present value (good will)." *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204-05 (7th Cir. 1990). Although Plaintiff has established Defendants' violation of the law, it still must provide the Court evidence that the violation caused actual confusion regarding whether Body Art by Daddy-O or Daddy-O's Tattoo's was or is affiliated with or part of Daddyo's Tattoo's, as well as actual losses of sales, profits, or goodwill. As such, an award of damages will be DEFERRED until the Plaintiff

provides the Court with detailed affidavits or other evidence of damages sustained in the way of loss of revenue, loss of goodwill, and damages to its goodwill and reputation as a result of Defendants' acts.

### D. Delivery and Destruction of Infringing Items and Means of Production

Plaintiff next requests that the Court issue an order pursuant to 15 U.S.C. § 1118, requiring all products, systems, merchandise, labels, signs, prints, packages, wrappers, receptacles, advertisements, and any other tangible items in possession of Defendants bearing the mark "DADDY-O'S TATTOO'S" and/or "BODY ART BY DADDY-O" or trademarks confusingly similar thereto, as well as all molds, plates, mortices, computer programs and files, and all other tangible and/or intangible means of making the same to be accounted, delivered up, and destroyed.

The decision whether to enter such an order is left to the Court's discretion. 15 U.S.C. § 1118 ("the court *may* order" that such material be delivered up and destroyed) (emphasis added); *see Breaking the Chain Foundation, Inc. v. Capital Educational Support, Inc.*, 589 F.Supp.2d 24, 33 (D.D.C. 2008). When an injunction is entered enjoining the Defendants from further use of the infringing material, courts have held that the delivery and destruction of such goods may be unnecessary. *See id.*; *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F.Supp. 278 (C.D. Cal. 1992); *Neva, Inc. v. Christian Duplications Intern., Inc.*, 743 F.Supp. 1533 (M.D. Fla. 1990). Further, prior to the entry of such order, Plaintiff is required to provide the United States attorney for this judicial district ten days notice of its request. § 1118.

Because 1) the Court is deferring its decision regarding the entry of a permanent injunction until such time that Plaintiff provides evidence that it has suffered an irreparable injury for which monetary damages are inadequate, and 2) Plaintiff has not submitted to the Court any evidence or allegation that he has provided the requisite notice to the United States attorney, the Court also DEFERS Plaintiff's request for an order requiring all infringing goods and products to be delivered up and destroyed. The Court will make such determination after it has considered Plaintiff's request for a permanent injunction and Plaintiff has supplied the requisite notice pursuant to § 1118.

### E. Plaintiff's Damages and Defendants' Profits

Plaintiff next makes a general request for "all Plaintiff's damages and Defendants' profits." The Court finds that this request is substantially similar to the one discussed in Section C, above. As discussed therein, Plaintiff is entitled to both Defendants' profits and its own damages, however he has provided the Court with no evidence of either. Upon a proper evidentiary submission, such damages and profits will be awarded.

### F. Treble Damages or Profits

Plaintiff also seeks to have any such damages or profits trebled pursuant to 15 U.S.C. § 1117. According to § 1117(a), the Court may enter judgment for a sum higher than the amount of actual damages, not to exceed three times the amount, depending on the circumstances of the case. This provision is properly invoked when the infringement is deliberate. *Gorenstein Enterp., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435-36 (7th Cir. 1989). However, this section only authorizes the

trebling of damages, not of profits, as is also requested by Plaintiff. *See Thompson v. Haynes*, 305 F.3d 1369, 1380 (Fed. Cir. 2002).

Here, based upon Plaintiff's allegations in the Complaint, Defendants knew of the infringing nature of their name as of at least August 17, 2009, yet continued to operate thereunder. As such, it appears that an award of treble damages may be appropriate in this case. However, the Court will also defer this determination until Plaintiff has provided actual evidence of damages, so that it may first ascertain the extent of damages caused.

**G. Attorneys' Fees**

In addition, Plaintiff seeks attorneys' fees in the amount of $4,572.30, as permitted by 15 U.S.C. § 1117, state law, and common law. Again, § 1117(a) provides for the awarding of reasonable attorneys' fees to the prevailing party in "exceptional cases." The Seventh Circuit has held that such cases include when Defendants violations are intentional or deliberate. *See Gorenstein*, 874 F.2d at 835-36. Here, prior to filing the instant lawsuit, Plaintiff attempted to resolve his dispute with Defendants through informal negotiations, which Defendants appear to have ignored. Further, Defendants have tendered to this Court no arguments to justify their use of the names Daddy-O's Tattoo's Inc. and Body-Art by Daddy-O. Accordingly, the Court finds that attorneys' fees are appropriate.

Plaintiff has also submitted to the Court an Affidavit prepared by his attorney stating the rates charged for his firm's services, totaling $4,041.00. (Doc. 4 Exh. B). Because Plaintiff is entitled to his attorneys' fees and the amount of those

fees is based upon documentary evidence properly before the Court, judgment will be entered against Defendants for such amount.

### H. Punitive Damages

Plaintiff's next request is for punitive damages in the amount of $5,000. Plaintiff seeks these damages pursuant to Illinois state and common law, in order "to deter Defendants from perpetrating such conduct . . . in the future." (Doc. 4 at 4). Although punitive damages are not permitted under the applicable federal statute, they remain available to the Plaintiff under Illinois law. *See JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 919 (7th Cir. 2007). Illinois courts have held that punitive damages may be awarded "when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard for the rights of others." *Jablonski v. Ford Motor Co.*, 923 N.E.2d 347, 394 (Ill. App. Ct. 2010) *(quoting Kelsay v. Motorolam Inc.*, 384 N.E.2d 353, 359 (Ill. App. Ct. 1978)). Further, while punitive damages are not favored under Illinois law, they "may be awarded in a proper case 'to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future.'" *Id.* at 395 (*quoting Loitz v. Remington Arms Co.,* 563 N.E.2d 397, 401 (Ill. 1990). As previously discussed, because Defendants knew of Plaintiff's prior use and registration of the name "Daddyo's Tattoo" since at least August 17, 2009, but nevertheless continued to use the names "Daddy-O's Tattoo's" and "Body Art by Daddy-O," Defendants' violations were both willful and intentional. Accordingly, Plaintiff is awarded punitive damages in the amount of $5,000 in order to deter any future misconduct by Defendants.

### I. Plaintiff's Costs

Plaintiff requests that the costs of this action be assessed against all Defendants. Because Plaintiff is the prevailing party, he is entitled to his costs pursuant to Federal Rule of Civil Procedure 54(d), as well as 15 U.S.C. § 1117(a). As such, costs in the amount of $531.30 shall be taxed against Defendants.[4]

### J. Pre-judgment and Post-judgment Interest

Finally, Plaintiff requests pre-judgment and post-judgment interest. The Seventh Circuit has held that pre-judgment interest is recoverable in cases of trademark infringement in order to make the Plaintiff whole. *See Gorenstein Enterp. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Further, the prime rate is the benchmark that is to be used for pre-judgment interest, unless another rate is statutorily defined. *First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472 (7th Cir. 1999); *Gorenstein*, 874 F.2d at 436. However, as the rationale behind pre-judgment interest is to make Plaintiff whole for Defendants' wrongful use of the names Daddy-O's Tattoo's and Body Art by Daddy-O, such interest will only be awarded as to actual damages and Defendants' profits. *See In re Marsshall*, 970 F.2d 383, 385 (7th Cir. 1992). It would be improper to award pre-judgment interest on the punitive damages, attorneys' fees, and costs which the Court has awarded Plaintiff, because those forms of relief are not based upon the monetary losses Plaintiff incurred, or the unjust enrichment Defendants enjoyed, from Defendants wrongful actions. Therefore, pre-judgment interest will be

---

[4] This amount is derived from the Affidavit provided by Plaintiff's attorney and attached to its Motion for Default Judgment. (Doc. 4 Exh. B).

awarded at the current prime rate of 3.25% on Plaintiff's damages and Defendants' profits, at such time that they are proven by Plaintiff.

With regards to post-judgment interest, 28 U.S.C. § 1961 dictates that it be awarded at the weekly average 1-year constant maturity Treasury yield, as published by the Federal Reserve System. Post-judgment interest will be assessed at this rate at such time judgment is entered for Plaintiff.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is GRANTED in part and DEFERRED. It is GRANTED to the extent that the Clerk is ordered to ENTER DEFAULT against Defendants. It is DEFERRED as to the awarding of Default Judgment until Plaintiff submits documentary evidence to the Court, in the way of detailed affidavits or otherwise, as has been detailed in the instant Order and Opinion. Plaintiff is ordered to submit such evidence by February 8, 2010. Should Plaintiff fail to do so, the Court will direct judgment to be entered against Defendants in the amount of Plaintiff's costs and attorneys' fees, as well as punitive damages in the amount of $5,000, with post-judgment interest to accrue thereon. IT IS SO ORDERED.

Entered this 10th day of January, 2011.

                                        s/ Joe B. McDade
                                        JOE BILLY McDADE
                                        United States Senior District Judge